IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CR-21-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| TACARLOS ANTIGO MILLER, | ) | |
| | ) | |
| Defendant. | ) | |

On February 26, 2025, a grand jury indicted Tacarlos Antigo Miller ("Miller" or

"defendant") on five counts: (1) possession with intent to distribute 400 grams or more of a mixture

and substance containing a detectable amount of fentanyl, 500 grams or more of a mixture and

substance containing a detectable amount of cocaine, a quantity of cocaine base ("crack"), and a

quantity of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) distribution of a quantity

of fentanyl and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (3)

possession with intent to distribute 400 grams or more of a mixture and substance containing a

detectable amount of fentanyl, 500 grams or more of a mixture and substance containing a

detectable amount of cocaine, a quantity of cocaine base ("crack"), and a quantity of marijuana

and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (4) possession of

a firearm in furtherance of a drug trafficking crime and aiding and abetting in violation of 18

U.S.C. §§ 2 and 924(c)(1)(A); and (5) possession of a firearm by a felon in violation of 18 U.S.C.

§§ 922(g)(1) and 924. See [D.E. 1, 4].

On December 19, 2025, Miller moved to suppress "the [car] keys seized by law

enforcement" from Miller's "property bag." [D.E. 84] 2. On March 4, 2026, the United States

responded in opposition [D.E. 91] and filed exhibits [D.E. 91-1, 91-2]. Having considered the evidence and governing law, the court denies Miller's motion to suppress.

I.

On September 12, 2024, members of the Wilmington Police Department ("WPD") Special Weapons and Tactics ("SWAT") team and Narcotics Investigation Division ("NID") executed several search warrants concerning an ongoing narcotics investigation. See [D.E. 91] 1. The search warrants pertained to a 1996 Chevy SUV with North Carolina tag TLN9498 ("Chevy SUV") and a 2006 Nissan Maxima with North Carolina tag VCH4745 ("Nissan Maxima"). See id. at 1–2. Under the Chevy SUV's hood, law enforcement found fentanyl, heroin, cocaine, and crack cocaine. See id. at 2. In the Nissan Maxima's trunk, law enforcement found fentanyl, heroin, cocaine, and three firearms. See id.

That same day, law enforcement conducted a traffic stop on Miller related to the search warrants. See id. WPD officers arrested Miller on an outstanding warrant and searched Miller incident to his lawful arrest. See id.; see also [D.E. 84] 1. During the search, officers found keys in Miller's pocket. See [D.E. 91] 2; [D.E. 91-1] 1–3. WPD seized the keys as evidence and impounded them with WPD's Property and Evidence Department ("P&ED") along with drugs, drug paraphernalia, cash, and other items seized from the related vehicle and residential search warrants. See [D.E. 91] 2; [D.E. 91-2] 1.[1] Law enforcement then transported Miller to the WPD. See [D.E. 84] 1.

---

[1] Miller asserts that the police collected the keys at the jail and placed the keys into a personal property bag with his clothing and wallet. See [D.E. 84] 1. Based on the government's exhibits (which include screenshots of body camera footage and an evidence log), the court finds that the police seized the keys as evidence from Miller's pockets during a search incident to his lawful arrest. See [D.E. 91-1, 91-2].

2

On September 12, 2024, after seizing the keys from Miller's pocket, law enforcement confirmed that one set of keys unlocked and started the Chevy SUV. See [D.E. 91] 2. On September 13, 2024, law enforcement signed Miller's keys out from WPD's P&ED and confirmed that the second set of keys unlocked and started the Nissan Maxima. See id.; [D.E. 91-2] 1. The Nissan Maxima belonged to Miller's co-defendant, Dyron Rush. See [D.E. 84] 1.[2] That same day, law enforcement returned the keys to WPD's P&ED. See [D.E. 91] 2; [D.E. 91-2] 1.

II.

Miller argues that law enforcement needed a search warrant to enter Miller's "property bag" and retrieve the Nissan Maxima car keys. [D.E. 84] 2. Miller concedes that he has no expectation of privacy inside Rush's Nissan Maxima; therefore, Miller does not move to exclude any fruits discovered inside the Nissan Maxima. See id.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The "touchstone" of the analysis "under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." Pennsylvania v. Mimms, 434 U.S. 106, 108–09 (1977) (per curiam) (quotations and citation omitted). A search pursuant to a valid warrant is reasonable. The Fourth Amendment, however, "does not specify when a search warrant must be obtained." Kentucky v. King, 563 U.S. 452, 459 (2011). Although warrantless searches are "presumptively unreasonable," courts have recognized "categories of permissible warrantless searches." Fernandez v. California, 571 U.S. 292, 298 (2014); see King, 563 U.S. at 459–60; Flippo v. West

---

[2] The Chevy Tahoe also belonged to Dyron Rush. See id. at 1–2. Miller admits that he does not have any expectation of privacy in Rush's vehicles. See id. at 2.

3

Virginia, 528 U.S. 11, 13–14 (1999) (per curiam); Katz v. United States, 389 U.S. 347, 357 & n.19 (1967). A search incident to a lawful arrest is one of these categories. See, e.g., Michigan v. DeFillippo, 443 U.S. 31, 35 (1979); United States v. Robinson, 414 U.S. 218, 224 (1973); Chimel v. California, 395 U.S. 752, 762–63 (1969); United States v. Currence, 446 F.3d 554, 558–59 (4th Cir. 2006); United States v. Scheetz, 293 F.3d 175, 184 (4th Cir. 2002); United States v. Nelson, 102 F.3d 1344, 1346 (4th Cir. 1996). Thus, "[w]hen an arrest is made, it is reasonable for the arresting officer to search the person arrested . . . . [and] search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." Chimel, 395 U.S. at 762–63.

Additionally, when there is no legitimate expectation of privacy in the place being searched, a "search" under the Fourth Amendment does not occur, and thus, no warrant or warrant exception is required. See United States v. Jacobsen, 466 U.S. 109, 113 & n.4 (1984); Illinois v. Andreas, 463 U.S. 765, 771 (1983); see, e.g., California v. Greenwood, 486 U.S. 35, 40–41 (1988); Hudson v. Palmer, 468 U.S. 517, 525–30 (1984); Rakas v. Illinois, 439 U.S. 128, 143 (1978); Katz, 389 U.S. at 359; United States v. Jackson, 728 F.3d 367, 373–75 (4th Cir. 2013); United States v. Castellanos, 716 F.3d 828, 832–35 (4th Cir. 2013); United States v. Taylor, 90 F.3d 903, 908 (4th Cir. 1996); United States v. Jeffus, 22 F.3d 554, 559 (4th Cir. 1994); United States v. Ramapuram, 632 F.2d 1149, 1153–54 (4th Cir. 1980). "In order to demonstrate a legitimate expectation of privacy, [a defendant] must have a subjective expectation of privacy, and that subjective expectation must be reasonable." United States v. Ferebee, 957 F.3d 406, 412 (4th Cir. 2020) (citation omitted); see United States v. Bynum, 604 F.3d 161, 164 (4th Cir. 2010).

"What is a reasonable expectation of privacy is by definition related to time, place and circumstance." Ramapuram, 632 F.2d at 1154 (citation omitted). For example, "[a] person lawfully arrested has no reasonable expectation of privacy with respect to property properly taken

4

from his person for inventory by the police." United States v. Davis, 690 F.3d 226, 254 n.30 (4th Cir. 2012) (citation omitted); United States v. Thompson, 837 F.2d 673, 674–76 (5th Cir. 1988). Therefore, so long as the property remains in the government's custody, "[l]ater examination of that property by another law-enforcement officer is . . . not an unreasonable search within the meaning of the Fourth Amendment." Davis, 690 F.3d at 254 n.30 (citation omitted); Thompson, 837 F.2d at 674–76; see, e.g., United States v. Turner, 28 F.3d 981, 983 (9th Cir. 1994) (concluding that the removal of defendant's cap from a jail property bag by a postal inspector without a warrant was proper since it was lawfully seized and remained in the jail's possession); United States v. Johnson, 820 F.2d 1065, 1072 (9th Cir. 1987) (concluding that money seized by state authorities upon defendant's arrest could be later reviewed by a federal agent to obtain serial numbers in a robbery investigation without a warrant); Lockhart v. McCotter, 782 F.2d 1275, 1280 (5th Cir. 1986) (concluding that no Fourth Amendment violation occurred because defendant had no reasonable expectation of privacy when police went into a defendant's personal property envelope and took a "second look" at the defendant's wallet without a warrant); United States v. Jenkins, 496 F.2d 57, 73–74 (2d Cir. 1974) (concluding that no Fourth Amendment violation occurred where a federal agent took a "second look" at money and seized it without a warrant because "once the money had been lawfully taken by the police for safekeeping [the defendant] no longer could reasonably expect any right of privacy with respect to the serial numbers"); see also United States v. Edwards, 415 U.S. 800, 807–09 (1974) (upholding a warrantless search and seizure of a defendant's clothing after arrest and stating that such a seizure and search is permissible "where the clothing or effects are immediately seized upon arrival at the jail [or sometime after the defendant's incarceration], held under the defendant's name in the 'property room' of the jail, and at a later time searched and taken for use at the subsequent criminal trial"). Moreover, an arrestee's

5

expectation of privacy is further diminished when the personal effects seized during a lawful arrest are evidence. See Edwards, 415 U.S. at 806 (stating that it is not unreasonable for law enforcement to hold as evidence and examine "personal effects of the accused that [law enforcement] already ha[s] in [its] lawful custody as the result of a lawful arrest"); id. at 808–09 (emphasizing the diminished privacy interest that an arrestee has in "weapons, means of escape, and evidence" (emphasis added)).[3]

In United States v. Grill, federal officers validly arrested Grill at the airport. See 484 F.2d 990, 990 (5th Cir. 1973). The county jail conducted a strip search and collected a loose key, which was sealed in an envelope and locked in a vault with Grill's other personal property. Customs officers in the Bahamas later found a duffle bag that allegedly belonged to Grill. See id. A small brass lock secured the duffle bag, which contained an explosive device. See id. at 991. A month after Grill's arrest, a federal agent went to the county jail with the brass lock and asked to see Grill's personal property. See id. The federal agent did not seek or obtain a search warrant. See id. The jail officer produced Grill's personal property, and the federal agent retrieved the key, inserted it into the brass lock, and discovered that the key fit. See id. With the consent of the jail officer, the federal agent seized the key. See id. Grill moved to suppress the key, and the district court denied Grill's motion. See id. at 990. The Fifth Circuit affirmed, explaining that once Grill's key had been "exposed to police view under unobjectionable circumstances," "no reasonable expectation of privacy [was] breached by [the federal agent] taking a second look at . . . [it because the] expectation of privacy already ha[d] been at least partially dissipated." Id. at 991.

_____

[3] The court recognizes that there are exceptions to an arrestee's diminished expectation of privacy in personal effects held as evidence, such as a cellphone, but no exceptions apply here. See, e.g., Riley v. California, 573 U.S. 373, 385–403 (2014).

6

Here, the parties agree that WPD lawfully arrested Miller pursuant to an outstanding arrest warrant. Thus, WPD permissibly searched Miller incident to his lawful arrest. See, e.g., DeFillippo, 443 U.S. at 35; Robinson, 414 U.S. at 224–26; Chimel, 395 U.S. at 762–63; Currence, 446 F.3d at 558–59; Scheetz, 293 F.3d at 184; Nelson, 102 F.3d at 1346. During the search, WPD seized miscellaneous keys from Miller's pocket, logged the keys as evidence, and turned the keys over to WPD's P&ED. See [D.E. 91-2].

Miller argues that WPD violated his Fourth Amendment rights when WPD "search[ed] . . . [his] property bag" to retrieve the Nissan Maxima keys, but Miller concedes that he had no expectation of privacy in the Nissan Maxima (which Rush owned). See [D.E. 84] 2. In other words, Miller only challenges the search of his property bag. But WPD did not take the Nissan Maxima keys from Miller's property bag. WPD checked the keys out from evidence. See [D.E. 91-2] 1. WPD logged the miscellaneous keys as "evidence," and did not place the keys in a bag with Miller's clothing and wallet. See id. Rather, WPD stored the keys with a "heroin bindle dosage unit," "cocaine," "fentanyl," "heroin," and a "black bag." See id.

Alternatively, even if WPD took the keys from Miller's property bag, Miller had no reasonable expectation of privacy in the keys after WPD lawfully seized them. See Davis, 690 F.3d at 254 n.30; Thompson, 837 F.2d at 675–76; Grill, 484 F.2d at 990. And WPD was permitted, without a warrant, to take a "second look" at the inventoried keys, which remained in WPD's uninterrupted custody after Miller's arrest. See Davis, 690 F.3d at 254 n.30; Turner, 28 F.3d at 983; Thompson, 837 F.2d at 675–76; Johnson, 820 F.2d at 1072; Lockhart, 782 F.2d at 1230; Jenkins, 496 F.2d at 73–74; Grill, 484 F.2d at 990. Like in Grill, Miller's expectation of privacy dissipated after the police lawfully seized the keys. See 484 F.2d at 991. But unlike Grill, Miller's keys were marked as evidence (not personal property), which further diminished Miller's

7

reasonable expectation of privacy. Cf. id. at 990; see also Edwards, 415 U.S. at 806, 808–09. Thus, a Fourth Amendment "search" did not occur, and the court denies Miller's motion to suppress. See Greenwood, 486 U.S. at 40–41; Hudson, 468 U.S. at 525–30; Jacobsen, 466 U.S. at 113 & n.4; Andreas, 463 U.S. at 771; Rakas, 439 U.S. at 143; Katz, 389 U.S. at 359; Jackson, 728 F.3d at 373–75; Castellanos, 716 F.3d at 832–35; Taylor, 90 F.3d at 908; Jeffus, 22 F.3d at 559; Ramapuram, 632 F.2d at 1153–54. Finally, the act of inserting the keys into the locks on Dyron Rush's vehicles did not violate the Fourth Amendment. See, e.g., United States v. Moses, 540 F.3d 263, 272 (4th Cir. 2008).

In opposition, Miller relies entirely on Bell v. Wolfish, 441 U.S. 520 (1979), which addressed warrantless searches of prison cells and prisoner property in the cells. As discussed, no search took place here; therefore, Bell does not help Miller.

### III.

In sum, the court DENIES defendant's motion to suppress [D.E. 84]. The court also DENIES defendant's request for an evidentiary hearing because defendant's motion to suppress presents no material factual disputes. See United States v. Bowman, 106 F.4th 293, 300 (4th Cir. 2024).

SO ORDERED. This 24 day of April, 2026.

JAMES C. DEVER III
United States District Judge

8